# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| **KEVIN ASHMORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:17-cv-00100** |
| **v.** | ) | **Judge Crenshaw / Frensley** |
| | ) | |
| **NANCY BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |


## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's "Motion for Judgment Based On The Administrative Record." Docket No. 20. Plaintiff has incorporated his accompanying Memorandum of Law into his Motion. *Id.* Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 21. Plaintiff has filed a Reply. Docket No. 22.

For the reasons stated below, the undersigned recommends that Plaintiff's "Motion for Judgment Based On The Administrative Record" be GRANTED, and that the decision of the Commissioner be REMANDED.

# I. INTRODUCTION

Plaintiff protectively filed his application for Disability Insurance Benefits ("DIB") on June 6, 2014,[1] alleging that he had been disabled since January 15, 2010, due to cerebral palsy and a congenital heart defect. *See, e.g.,* Docket No. 18, Attachment ("TR"), pp. 56, 162. Plaintiff's application was denied both initially (TR 81-83) and upon reconsideration (TR 85-86). Plaintiff subsequently requested (TR 87-88) and received (TR 27-55) a hearing. Plaintiff's hearing was conducted on July 12, 2016, by Administrative Law Judge ("ALJ") John Daughtry. TR 27. Plaintiff and vocational expert ("VE"), Dr. Stephen Bernard Schnacke, appeared and testified. TR 30-54.

On September 9, 2016, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 10-26. Specifically, the ALJ made the following findings of fact:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2014.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 15, 2010 through his date last insured of September 30, 2014 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: mild cerebral palsy with right sided spasticity and history of interstitial lung disease (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or

---

[1]Plaintiff protectively filed for DIB on June 6, 2014. TR 56. The actual filing date for Plaintiff's DIB application was on July 17, 2014. TR 150-51.

medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) that was limited to: lifting and carrying up to twenty pounds occasionally and ten pounds frequently primarily using the left upper extremity to lift and carry and the right upper extremity to assist and balance objects; sitting, standing and walking up to six hours each in eight-hour workdays with normal breaks; frequent pushing and pulling with the right upper and lower extremities; occasional kneeling and crouching; occasional overhead reaching with the right upper extremity; occasional exposure to extremely cold temperatures and pulmonary irritants such as dust, fumes, odors gases and poor ventilation.

6.  Through the date last insured, the claimant was capable of performing past relevant work as construction runner/deliverer, [DOT# 230.663-010], (light/unskilled/SVP 2). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from January 15, 2010, the alleged onset date, through September 30, 2014, the date last insured (20 CFR 404.1520(f)).

TR 15-22.

On November 7, 2016, Plaintiff timely filed a request for review of the hearing decision.

TR 144. On September 18, 2017, the Appeals Council issued a letter declining to review the case

(TR 1-4), thereby rendering the decision of the ALJ the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

If the Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different

conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

(1) If the claimant is working and the work constitutes substantial

gainful activity, benefits are automatically denied.

(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[2] If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.,* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ improperly considered the evidence, failed to fully and fairly develop the record, and issued a decision that does not allow for meaningful review because the ALJ: (1) failed to accord proper weight to the opinion of Plaintiff's treating physician; (2) improperly discredited Plaintiff's subjective complaints; (3) erroneously gave limited weight to the letter provided by Plaintiff's father; (4) failed to consider that the treatment options for cerebral palsy are limited; and (5) determined a residual functional capacity that is not supported by the medical evidence. Docket No. 20. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

The court shall have power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or
reversing the decision of the Commissioner of Social Security,
with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. ALJ's Development of the Record

As an initial matter, Plaintiff contends that "the ALJ had the duty to develop the record fully and fairly." Docket No. 20 at 11. Plaintiff correctly asserts that the ALJ must fully develop the record, and for the reasons discussed below, Plaintiff has shown that the ALJ did not do so.

The duty of the ALJ is to "fully and fairly develop the administrative record." *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986). In doing so, the ALJ must identify the reasons and basis for crediting or rejecting certain items of evidence (*see, e.g., Morehead Marine Servs. v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998)), as there can be no meaningful judicial review without an adequate explanation of the factual and legal basis for the ALJ's decision (*Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)).

As will be demonstrated below, the ALJ has not met his duty to fully and fairly develop

the record. Because the ALJ failed to develop the evidence and adequately explain the reasons and basis for his conclusions, and because the ALJ's findings are not supported by "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," the ALJ's determination is not supported by substantial evidence. The undersigned therefore recommends that this action be remanded.

### a. Weight the ALJ Accorded to the Opinion of Plaintiff's Treating Physician

Plaintiff maintains that "the ALJ improperly rejected the opinion of Plaintiff's treating physician," Dr. Joey Hensley. Docket No. 20 at 6. Specifically, Plaintiff contends that the ALJ erroneously concluded Dr. Hensley's Medical Source Statement opinion was inconsistent with the record, and that the ALJ's explanation was too vague and ambiguous to support this determination. *Id.* at 7. Plaintiff argues that the ALJ's reliance on the opinion of Dr. Larry McNeil is inappropriate because Dr. McNeil, as a State agency medical consultant, did not examine Plaintiff, and did not consider Plaintiff's subjective complaints in rendering his opinion. *Id.* at 7-8. Specifically, Plaintiff argues that "it is unclear how the ALJ could simultaneously find Plaintiff in part credible, while at the same time rely on an opinion that failed to account for Plaintiff's testimony." *Id.* at 8.

Defendant responds that the ALJ appropriately accorded little weight to Dr. Hensley's opinion. Docket No. 21. Defendant submits that the ALJ correctly determined that "Dr. Hensley's suggested limitations appear to be extreme" and inconsistent with the record based upon Plaintiff's subsequently reported daily activities, conservative treatment of his condition, lack of treatment since June 2014, the temporary nature of Plaintiff's Rocky Mountain Spotted Fever, and the opinions of two State agency medical consultants, Drs. Sonia Williams and Larry

McNeil. *Id.* at 11-12, 14-16. Defendant argues that, based on the pain and range of motion questionnaires completed by Dr. Hensley on August 1, 2014, "the mildly limited range of motion on only the right side does not account for Dr. Hensley's opinion that Plaintiff—who Dr. Hensley acknowledged experienced no pain and only mild fatigue—could (as one example) only sit for a total of two hours during the day." *Id.* at 13, *citing* TR 250-52, 332-33. Defendant contends that the ALJ's reasons for discounting Dr. Hensley's opinion were "supported by the evidence in the case record" and were "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 15, *citing* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Defendant further argues that "[b]oth Dr. McNeil and the ALJ found that Plaintiff's subjective complaints were generally consistent with the RFC [residual functional capacity]," and "the ALJ found that to the extent Plaintiff argued that his limitations were greater, they were undermined by other evidence in the record." Docket No. 21 at 16.

Plaintiff replies that the ALJ's analysis of his past treatment as grounds to discount his credibility failed to account for the nature of his condition. Docket No. 22 at 3. Plaintiff notes that "because cerebral palsy is an injury to the brain, treatment is limited," and that as a result, the "conservative treatment" Plaintiff received does not undermine his suggested limitations. *Id.* Plaintiff further replies that the ALJ's reliance on Dr. McNeil's opinion is problematic because Dr. McNeil did not consider Plaintiff's subjective complaints. *Id.* at 4.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion

we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion . . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

The ALJ in the instant action discussed the medical records and opinions of Plaintiff's treating physician, Dr. Joey Hensley, as follows:

> On September 17, 2014, Joey Hensley, M.D., the claimant's primary care physician, provided a medical source statement regarding the claimant's physical limitations. He suggested that the claimant was unable to lift any objects, could stand and walk up to one-hour total in eight-hour workdays and only in thirty-minute increments, could sit up to two hours in an eight-hour workdays [*sic*] and only in segments of thirty minutes; could occasionally perform both fine and gross manipulative activities with the left hand but none with the right hand, could never raise his right arm above shoulder level, could not operate a motor vehicle and could not work around dangerous equipment, could have frequent exposure to noise, could have occasional exposure to heat, cold, dust, smoke and fumes, could never bend, stoop or balance, and would be absent from work four or more days each month due to his impairment related symptoms (Exhibit 6F).

> As seen above, the claimant was hospitalized in June 2014, after sustaining a tick bite. On September 17, 2014, Dr. Hensley provided an assessment pertaining to weakness involving the claimant's upper and lower right extremities, which reportedly complicated the cerebral palsy however, it is noted that these complications were only temporary. The evidence suggests that Dr. Hensley last treated the claimant in June 2014, immediately after the hospitalization. Subsequently, the claimant has not required significant treatment for his alleged impairments. *Although Dr. Hensley has treated the claimant in the past and has noted the claimant's mild cerebral palsy, his treatment involved infrequent office visits that have been more for general conditions such* [*sic*] *bronchitis, sinusitis, pharyngitis (Exhibit 2F, 10F). Dr. Hensley's suggested limitations appear to be extreme and are inconsistent with the record considered in its entirety including the claimant's subsequently reported daily activities, lack of significant treatment since around June 2014 and the well supported opinion of Dr. McNeil who reviewed the entire record in 2015. Therefore, the undersigned assigns little weight to Dr. Hensley's opinion.*

TR 18-19 (emphasis added).

An ALJ may also consider the opinion of a non-examining physician designated by the

Secretary in determining whether a claimant has medically determinable impairments. *Reynolds v. Sec'y of Health & Human Servs.*, 707 F.2d 927, 930 (6th Cir. 1983). The ALJ addressed the medical opinion of non-examining physician Dr. Larry McNeil as follows:

> On March 30, 2015, Larry McNeil, M.D., a State agency medical consultant, viewed the medical evidence. Dr. McNeil opined that the claimant retained the capacity to lift and carry up to twenty-five pounds occasionally and ten pounds frequently. He stated the claimant was capable of standing and walking up to six hours total in an eight-hour workday with normal breaks. He noted the claimant could sit up to six hours in an eight-hour workday. He indicated the claimant suffered limitations pushing and pulling with the right upper and lower extremities. He reported the claimant could frequently push and pull with the right upper and lower extremities. Dr. McNeil stated the claimant could frequently climb ramps, stairs, balance, stoop and crawl but occasionally kneel and crouch. He noted the claimant could never climb ladders, ropes or scaffolds. He indicated the claimant suffered limitations reaching in any direction including overhead with the right upper extremity. He concluded the claimant must avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, poor ventilation and hazards such as machinery and heights (Exhibit 5A).
>
> Dr. McNeil is familiar with the disability process and is considered an expert in his field. *His assessment is generally consistent with the medical evidence of record including treatment notes provided by Dr. Lawrence, which document some right sided spasticity and weakness. The record indicates the claimant is left hand dominant and would primarily lift and carry objects with the upper left extremity. Likewise, the respiratory limitations are consistent with the radiological test results of the claimant's lungs, as seen above (Exhibit 3F).* Therefore, the undersigned assigns significant weight Dr. McNeil's opinion.

TR 19 (emphasis added).

The ALJ also addressed the medical opinion of state agency physician Dr. Sonia Williams as follows:

On September 4, 2014, Sonia Williams, M.D. a State agency consultant, provided a residual functional capacity assessment. She opined the claimant retained the capacity to lift and carry up to twenty pounds occasionally and ten pounds frequently. She stated the claimant was capable of standing and walking up to six hours total in an eight-hour workday with normal breaks. She noted the claimant was able to sit up to six hours total in an eight-hour workday. She indicated the claimant could engage in unlimited pushing and pulling including the operation of hand and foot controls. She reported the claimant could frequently climb ramps, stairs, balance, stoop, crouch and crawl but occasionally climb ladders, ropes and scaffolds. She concluded the claimant must avoid concentrated exposure to hazards such as machinery and heights (Exhibit 2A). *Dr. Williams' opinion is generally consistent with the evidence and is given partial weight to the extent that it supports and aligns with the claimant's determined residual functional capacity. As to the light lifting and carrying restrictions, treatment notes document some spasticity and weakness involving the right upper and lower extremities that necessitate (Exhibits 2F and 3F) limitation of activity along the right side consistent with the claimant's determined residual functional capacity.*

TR 18 (emphasis added).

Dr. Hensley treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's according greater weight to his opinion than to other opinions, as long as that opinion was supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. As the ALJ correctly explained however, Dr. Hensley's opinion contradicts other substantial evidence in the record, including the medical opinions of Drs. Williams and McNeil, the lack of significant treatment for Plaintiff's alleged disability, Plaintiff's infrequent visits to Dr. Hensley for only general conditions, and Plaintiff's reported daily activities. The ALJ, therefore, was not bound to accord greater weight to Dr. Hensley's medical source statement opinion.

Additionally, Plaintiff argues that the ALJ improperly relied on Dr. McNeil's opinion

because Dr. McNeil did not consider Plaintiff's subjective complaints. Docket No. 20 at 8. Contrary to Plaintiff's assertion, Dr. McNeil did address the subjective complaints of Plaintiff in his consultative examination report. TR 71-75. Dr. McNeil indicated "Yes" as to whether "one or more of the individual's medically determinable impairment(s) (MDI(s)) [could] reasonably be expected to produce the individual's pain or other symptoms," and "Yes" as to whether "the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms [could be] substantiated by the objective medical evidence alone." TR 71. Thus, the ALJ did properly rely on the opinion of Dr. McNeil after weighing his opinion against the other medical evidence. As the ALJ discussed above, Dr. McNeil's opinion was consistent with other medical evidence in the record, and the ALJ appropriately explained his rationale for according Dr. McNeil's opinion "significant weight."

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2). The ALJ in the instant action considered the evidence of record, properly accorded little weight to Dr. Hensley's opinion, and explained his reasons therefor. Because Dr. Hensley's opinion was inconsistent with other substantial evidence in the record, the Regulations do not mandate that the ALJ accord Dr. Hensley's evaluation controlling weight. Accordingly, Plaintiff's argument fails.

## b. ALJ's Determination of Plaintiff's Credibility and Subjective Complaints

Plaintiff contends that in finding that his subjective complaints were not fully credible, the ALJ did not appropriately address how the "effects of cerebral palsy on his right extremities impair his ability to work." Docket No. 20 at 10. Plaintiff submits that none of his daily activities would support a finding that he could engage in full-time work. *Id.* Plaintiff contends "the ALJ failed to consider the nature of Plaintiff's illness" in finding that limited past treatment weighed against Plaintiff's credibility because "cerebral palsy is caused by injury to the brain," and "its effects are permanent, meaning treatment is limited." *Id.* at 10-11. Plaintiff maintains that the ALJ improperly weighed Plaintiff's testimony, the statement by Plaintiff's father, and Dr. Hensley's consultative examination findings. *Id.* at 9-11. Plaintiff additionally argues the ALJ failed to consider the nature of Plaintiff's prior work as "sympathetic employment" in determining Plaintiff could return to his prior work. *Id.* at 11-12. Plaintiff further argues that "it is not clear from the ALJ's analysis what part of Plaintiff's testimony was contradicted by the evidence. Instead of providing a meaningful analysis, the ALJ relied on generic boilerplate language." *Id.* at 11.

Defendant responds that the ALJ properly evaluated Plaintiff's subjective complaints. Docket No. 21. Defendant submits that the ALJ explained what evidence he found to be inconsistent with the extent of Plaintiff's alleged limitations, "including the objective medical evidence, Plaintiff's minimal and conservative treatment, Plaintiff's daily activities, Plaintiff's part-time work, Plaintiff's reasons for leaving employment, evidence that Plaintiff worked with these impairments prior to the alleged onset date of disability, the medical opinions, and third party reports." *Id.* at 16-17. Defendant maintains "[the] ALJ explained the rationale for his

credibility determination and did not merely rely on boilerplate language as Plaintiff suggests." *Id.* at 17. Defendant argues that "[the] ALJ appropriately noted that the objective medical evidence only showed some mild findings on the right side," which warranted concluding that Plaintiff complaint's were only partially credible. *Id.* at 17-18. Defendant contends that the ALJ "did not rely solely on Plaintiff's reported activities of daily living to determine that Plaintiff could work, but properly considered the inconsistency between Plaintiff's alleged limitations and his ability to perform a number of activities of daily living as one factor in the credibility analysis." *Id.* at 18.

Defendant further contends that Plaintiff's argument—that treatment for cerebral palsy is limited—"is undermined by the fact that he had cerebral palsy since age one, which the ALJ recognized, and had been able to work for more than 10 years with the condition." *Id.* at 19. Defendant submits that Plaintiff "sought only infrequent care for conditions such as bronchitis, sinusitis, and pharyngitis," and that "although Plaintiff stopped working in early 2010, he testified at his administrative hearing that 'it all started back when I had a tick bite in 2014,' which undermines his allegation that his cerebral palsy resulted in work limitations." *Id.* at 20, *citing* TR 35-36. Additionally, Defendant argues the ALJ's analysis was not deficient with regard to the testimony of Plaintiff's father, and that "although Plaintiff contends that his ten years of employment came with significant accommodations from his father, this is insufficient to support his request for remand" because the ALJ properly determined Plaintiff could perform other work under the regulations. *Id.* at 21.

Plaintiff replies that "the lack of analysis by the ALJ does not allow a reviewing court to discern the ALJ's rational." Docket No. 22 at 2. Plaintiff maintains that: (1) "the ALJ's

superficial analysis of the medical record in no way contradicted Plaintiff's testimony"; (2) "the

ALJ failed to consider Plaintiff's financial situation when he characterized Plaintiff's treatment

as 'conservative'"; and (3) "Plaintiff's work history does not undercut his complaints related to

cerebral palsy . . . ." *Id.* Plaintiff further argues that "none of Plaintiff's activities would support a

finding that he was capable of full-time work." *Id.* at 3.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective

allegations, including pain:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability . . . . [T]here must be
> evidence of an underlying medical condition *and* (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986), *quoting* S.

Rep. No. 466, 98th Cong., 2d Sess. 24 (emphasis added); *see also* 20 CFR §§ 404.1529, 416.929

("statements about your pain or other symptoms will not alone establish that you are

disabled . . . ."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("though Moon

alleges fully disabling and debilitating symptomatology, the ALJ may distrust a claimant's

allegations . . . if the subjective allegations, the ALJ's personal observations, and the objective

medical evidence contradict each other."). Moreover, "[a]llegations of pain . . . do not constitute

a disability, unless the pain is of such a debilitating degree that it prevents an individual from

participating in substantial gainful employment." *Bradley v. Sec'y of Health & Human Servs.*,

862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage, and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)*, construing* 20 CFR § 404.1529(c)(2). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ in the case at bar ultimately found Plaintiff's complaints regarding the severity of his impairment and functional limitations to be partially credible. TR 20. The ALJ discussed the evidence of Plaintiff's subjective complaints and explained his rationale for finding Plaintiff's complaints to be partially credible as follows:

> The claimant was 42 years of age with a twelfth grade education at the time of his July 12, 2016, disability hearing. He alleges disability due to complications from cerebral palsy with right sided spasticity and history of interstitial lung disease. He maintains his condition is progressively getting worse despite treatment. However, as seen below, medical records fail to substantiate the claimant's complaints.
>
> The claimant was a year old when he received transposition of the great arteries, which was complicated by respiratory failure that resulted in anoxic brain injury and cerebral palsy with spasticity in the upper and lower right extremities (Exhibits 1F and 3F).

In 2004,[4] the claimant presented to Joseph S. Hensley, M.D., a primary care physician, for further evaluation of his condition. Upon presentation, he reported a remote history of respiratory complications but denied chest pain. X-rays of the claimant's lungs performed on June 6, 2014, showed the presence of a moderate honeycombing characteristic of interstitial fibrotic scarring in the left lung; however, no significant changes were noted when compared to radiological test results performed in August 2005 (Exhibit 3F page 23).

An examination of the claimant's bilateral extremities only revealed slightly decreased ranges of motion of the right shoulder, elbow, hips and knee. The claimant stated this condition significantly limited his ability to engage in work activity; however, no medications have been prescribed for this condition nor has he presented to the emergency department with any complications during the relevant period in question. The evidence indicates that treatment has been quite limited. In fact, the claimant testified that he only presented to Dr. Hensley for an annual checkup. It should also be noted the claimant testified he was left hand dominant (Testimony and Exhibits 3E and 2F).

. . .

On June 18, 2015, Malvin Ashmore, the claimant's father, provided a letter that was supportive of the claimant's allegations of disability. Mr. Ashmore reported his opinion regarding physical difficulties that the claimant experiences on a daily basis. (Exhibit 9E). Such statements are not from accepted medical experts under Social Security Regulations, but are lay opinions and observations of a claimant's functioning that must be considered. (SSR-06-03p)[.] These opinions are based upon casual observation, rather than objective medical evidence and testing. The observations of such layperson(s) certainly do not outweigh the opinions of medically acceptable sources. *Ultimately, Mr. Ashmore's statements are unpersuasive for the same reasons that the claimant's own allegations do not fully persuade the undersigned.* Accordingly, Mr. Ashmore's statements are given limited weight in determining the claimant's residual functional capacity.

---

[4]Although the ALJ, in his hearing decision, states that Plaintiff's presentation to Dr. Hensley took place "[i]n 2004" (TR 18), the record indicates that the correct date for this visit is June 18, 2014 (TR 250). The ALJ's misstatement of the year appears to be a typographical error, and is inapposite to the issues before this court.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; *however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.*

The undersigned finds the claimant experiences some limitations but only to the extent described in the residual functional capacity above. For instance, right sided spasticity and weakness limits him to occasional overhead reaching with the right arm.

In sum, the claimant's allegations regarding the nature and severity of his impairment-related symptoms and functional limitations are partially credible. *While the medical and other evidence of record supports some of the allegations regarding these symptoms, the allegations regarding their severity, and the related functional restrictions, are not supported. The undersigned has carefully read and considered all the evidence of record and finds the residual functional capacity set forth above is more consistent with the appropriate medical findings and the overall evidence of record than the allegations made by the claimant.* The claimant's diagnosed mild cerebral palsy with right sided spasticity and history of interstitial lung disease merit limitations within a light exertional range that was limited to: lifting and carrying up to twenty pounds occasionally and ten pounds frequently primarily using the left upper extremity to lift and carry and the right upper extremity to assist and balance objects; sitting, standing and walking up to six hours each in eight-hour workdays with normal breaks; frequent pushing and pulling with the right upper and lower extremities; occasional kneeling and crouching; occasional overhead reaching with the right upper extremity; occasional exposure to extremely cold temperatures and pulmonary irritants such as dust, fumes, odors gases and poor ventilation.

TR 17-18, 19-20 (emphasis added).

As can be seen above, the ALJ's decision specifically addresses not only the medical evidence and the letter from Plaintiff's father, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 17-18, 19-20. The ALJ's

articulated rationale demonstrates that, although there is evidence which could support Plaintiff's subjective complaints, the ALJ chose to rely on evidence that was inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531, *citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531, *citing Bradley,* 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. *See King*, 742 F.2d at 975.

As discussed above, after assessing all of the medical and testimonial evidence, the ALJ ultimately found Plaintiff's complaints regarding the severity of his impairment and functional limitations to be partially credible. TR 20. In making this determination, the ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision. The decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim

23

fails.

### c. ALJ's Consideration of the Letter Provided by Plaintiff's Father

Plaintiff maintains that the ALJ erred in giving limited weight to the letter provided by Plaintiff's father. Docket No. 20. Specifically, Plaintiff contends that the "ALJ neglected to consider that Plaintiff's father had the opportunity to observe Plaintiff in different settings," and further failed to consider that "[n]ot only did Plaintiff live with his father, but he was also employed by him." *Id.* at 11. Plaintiff argues that the letter from his father indicated that "Plaintiff has always struggled with weakness, and that the tick-borne illness had caused a significant deterioration in Plaintiff's energy," but that "[n]evertheless, the ALJ erroneously dismissed this evidence." *Id.*

Defendant responds that "the ALJ appropriately considered the testimony of Plaintiff's father, found it to be not entirely credible, and gave it limited weight." Docket No. 21 at 21. Defendant argues that "although Plaintiff contends that his ten years of employment came with significant accommodations from his father, this is insufficient to support his request for remand." *Id.* Defendant contends that "[b]ecause the ALJ properly determined that Plaintiff could perform other work under the regulations, the vocational factors identified by Plaintiff do not undermine the ALJ's finding." *Id.* Defendant further contends that the ALJ appropriately discounted the father's opinion on the effects of Plaintiff's Rocky Mountain Spotted Fever, noting that "[t]hough Plaintiff reported significant fatigue from the tick bite, this is undermined by his report to Dr. Hensley in June 2014, that he 'felt better now,' as well as Dr. Hensley's assessment that Plaintiff's Rocky Mountain Spotted Fever had resolved." *Id.* at 20-21, *citing* TR 254.

Plaintiff replies that he was provided "numerous accommodations" while he was working for his father, and that "[c]onsequently, [his] work history does not undercut his complaints related to cerebral palsy, if anything, his work history, when viewed in context, corroborates Plaintiff's testimony." Docket No. 22 at 2.

With regard to the evaluation of evidence from nonmedical sources, the Code of Federal Regulations states:

> Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim. We may receive evidence from nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative record.

20 CFR § 404.1513(a)(4).

Additionally, under the heading "Explanation of the Consideration Given to Opinions from 'Other Sources,'" SSR 06-03p states as follows:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.* In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully

favorable.

SSR 06-03p (emphasis added).

As has been quoted above, the ALJ discussed the letter from Plaintiff's father as follows:

> On June 18, 2015, Malvin Ashmore, the claimant's father, provided a letter that was supportive of the claimant's allegations of disability. Mr. Ashmore reported his opinion regarding physical difficulties that the claimant experiences on a daily basis. (Exhibit 9E). Such statements are not from accepted medical experts under Social Security Regulations, but are lay opinions and observations of a claimant's functioning that must be considered. (SSR-06-03p)[.] These opinions are based upon casual observation, rather than objective medical evidence and testing. The observations of such layperson(s) certainly do not outweigh the opinions of medically acceptable sources. *Ultimately, Mr. Ashmore's statements are unpersuasive for the same reasons that the claimant's own allegations do not fully persuade the undersigned.* Accordingly, Mr. Ashmore's statements are given limited weight in determining the claimant's residual functional capacity.

TR 19-20 (emphasis added).

Although the ALJ reasoned that the letter from Plaintiff's father was "unpersuasive for the same reasons that claimant's own allegations do not fully persuade the undersigned," the ALJ did not mention, much less discuss that Plaintiff's father was his only past employer; that he provided Plaintiff with "sympathetic employment"; that he made accommodations for Plaintiff; and that he was therefore in a unique position to shed light on Plaintiff's limitations. TR 20.

Because the ALJ did not mention, much less discuss, these factors, the undersigned cannot determine whether the ALJ considered them when deciding to accord the letter limited weight. While it is within the province of the ALJ to accord less weight to nonmedical evidence that is inconsistent with the medical evidence, the ALJ must explain his rationale for doing so, and the ALJ's explanation must allow for meaningful judicial review. Because the undersigned

cannot determine whether the ALJ considered these factors when according the letter limited weight, the undersigned recommends that this action be remanded for further development of the record with regard to the ALJ's consideration of the letter from Plaintiff's father.

### d. ALJ's Consideration of the Nature of Cerebral Palsy

Plaintiff maintains that, in discounting Plaintiff's credibility and alleged extent of limitations because of the sparsity and conservative nature of treatment Plaintiff received, "the ALJ failed to consider the nature of Plaintiff's illness." Docket No. 20 at 10. Plaintiff notes that "[b]ecause cerebral palsy is caused by injury to the brain, its effects are permanent, meaning treatment is limited." *Id.* at 10-11.

Defendant responds that Plaintiff's argument (that treatment for cerebral palsy is limited) "is undermined by the fact that he had cerebral palsy since age one, which the ALJ recognized, and had been able to work for more than 10 years with the condition." Docket No. 21 at 19.

Plaintiff, in his reply, reiterates his assertions that "the ALJ failed to consider the nature of Plaintiff's condition" and that "because cerebral palsy is an injury to the brain, treatment is limited." Docket No. 22 at 3.

As is discussed above, the ALJ has a duty to fully and fairly develop the record, such that there can be meaningful judicial review. With regard to the ALJ's consideration of Plaintiff's cerebral palsy, the ALJ has not done so. The ALJ noted only that "[t]he evidence indicates that treatment has been quite limited." TR 18. The ALJ's decision does not acknowledge the nature of cerebral palsy or mention that the treatment options for cerebral palsy itself are limited. As a result, the undersigned cannot determine whether the ALJ properly considered the nature of cerebral palsy and its limited treatment options when rendering his decision. The undersigned

therefore recommends that this action be remanded for further development of the record with regard to the ALJ's consideration of the nature of cerebral palsy and the limited treatment options therefor.

### e. ALJ's Determination of Plaintiff's Residual Functional Capacity ("RFC")

Plaintiff contends that "the ALJ's proffered RFC does not seem to be supported by the medical evidence." Docket No. 20 at 8. Plaintiff notes that "[t]he ALJ concluded Plaintiff was capable of light work, purportedly relying on state doctor Larry McNeil M.D.," and that "this doctor however, did not consider Plaintiff's subjective complaints." *Id.* Plaintiff contends that he "would have serious issues with his right hand and arm" and that "the CE [consultative examination] completed by Dr. Hensley, which noted limited range of motion in Plaintiff's extremities," corroborated his testimony. *Id.*

Plaintiff notes that "[t]he ALJ attempted to account for [the limitations contained in Dr. Hensley's CE] in his RFC by noting Plaintiff would primarily use the 'right[5] [*sic*] upper extremity to lift and carry and the right upper extremity to assist and balance objects," and argues that the ALJ's conclusion is not supported by the record because "according to Dr. Hensley, Plaintiff was incapable of using his right extremity at all." *Id.* Plaintiff submits that in light of vocational expert Dr. Stephen Bernard Schnacke's testimony that "an individual who can use only one hand is likely not to be able to sustain any gainful employment," Plaintiff should have been found disabled. *Id.* at 8-9, *citing* TR 52.

---

[5]In the ALJ's decision, the ALJ stated that Plaintiff was limited to ". . . lifting and carrying up to twenty pounds occasionally and ten pounds frequently primarily using the *left* upper extremity to lift and carry and the right upper extremity to assist and balance objects . . . ." TR 16 (emphasis added).

Plaintiff further submits that he "engaged in very limited daily activities," and that "[n]one of [his] activities, alone, or in combination, would support a finding that Plaintiff could engage in full time work." *Id.* at 10. As discussed above, Plaintiff also contends that "the ALJ failed to consider the nature of Plaintiff's illness. Because cerebral palsy is caused by injury to the brain, its effects are permanent, meaning treatment is limited." *Id.* at 10-11. Additionally, as discussed above, Plaintiff argues the ALJ erroneously gave the letter Plaintiff's father provided limited weight and failed to consider that Plaintiff's only past employment was "sympathetic work" in concluding he could return to his previous work. *Id.* at 11-12.

Defendant responds that the ALJ's decision should be affirmed "because substantial evidence supports the ALJ's RFC, and with that RFC, and considering Plaintiff's vocational factors, Plaintiff could make a successful adjustment to perform other work." Docket No. 21 at 10. Defendant argues that the ALJ appropriately accorded little weight to Dr. Hensley's opinion because his opinion was inconsistent with other substantial evidence in the record. *Id.* at 11. Defendant further argues that the ALJ appropriately relied on the opinion of Dr. McNeil, and that Dr. McNeil did evaluate Plaintiff's subjective complaints. *Id.* at 15-16. Defendant submits that "[i]n forming the RFC, the ALJ also discussed nonmedical evidence and evaluated Plaintiff's subjective complaints." *Id.* at 16.

Defendant argues that the ALJ correctly evaluated the inconsistency between Plaintiff's daily activities and his subjective complaints as one factor among others in the credibility analysis. *Id.* at 18. Defendant contends that Plaintiff's argument (that treatment for cerebral palsy is limited) "is undermined by the fact that he had cerebral palsy since age one, which the ALJ recognized, and had been able to work for more than 10 years with the condition." Defendant

also argues that "the ALJ appropriately considered the testimony of Plaintiff's father, found it to be not entirely credible, and gave it limited weight." *Id.* at 21. Additionally, Defendant argues that "although Plaintiff contends that his ten years of employment came with significant accommodations from his father, this is insufficient to support his request for remand" because the ALJ properly determined Plaintiff could perform other work under the regulations. *Id.* at 21.

Plaintiff replies that "the ALJ provided no analysis or discussion regarding the medical evidence that contradicted Plaintiff's testimony, instead he provided a generic rendition of the medical evidence." Docket No. 22 at 2. Plaintiff argues that the ALJ's reliance on Dr. McNeil's opinion is problematic because Dr. McNeil did not consider Plaintiff's subjective complaints. *Id.* at 4. Plaintiff contends that "despite the Commissioner's attempt to ascribe value to Plaintiff's daily activities, Plaintiff's limited activities do not undermine Plaintiff's subjective complaints." *Id.* at 3. Plaintiff argues that "none of the activities cited in the Commissioner's brief, including attending church and grocery shopping two to three times a week for a couple hours, would support the ALJ's conclusion." *Id.* at 3, *citing* Docket No. 21 at 18. Plaintiff further argues the ALJ "failed to consider the nature of Plaintiff's condition," and that, "when viewed in context, 'conservative treatment' does not undermine Dr. Hensley's restrictions." *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR § 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and

continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC to perform light work, stating:

The claimant's diagnosed mild cerebral palsy with right sided spasticity and history of interstitial lung disease merit limitations within a light exertional range that was limited to: lifting and carrying up to twenty pounds occasionally and ten pounds frequently primarily using the left upper extremity to lift and carry and the right upper extremity to assist and balance objects; sitting, standing and walking up to six hours each in eight-hour workdays with normal breaks; frequent pushing and pulling with the right upper and lower extremities; occasional kneeling and crouching; occasional overhead reaching with the right upper extremity; occasional exposure to extremely cold temperatures and pulmonary irritants such as dust, fumes, odors gases and poor ventilation.

TR 20.

The ALJ explained:

In sum, the claimant's allegations regarding the nature and severity of his impairment-related symptoms and functional limitations are partially credible. *While the medical and other evidence of record supports some of the allegations regarding these symptoms, the allegations regarding their severity, and the related functional restrictions, are not supported. The undersigned has carefully read and considered all the evidence of record and finds the residual functional capacity set forth above is more consistent with the appropriate medical findings and the overall evidence of record than the allegations made by the claimant.*

*Id.* (emphasis added).

In so finding and as discussed above, the ALJ considered the medical evidence of record, including the opinion of Plaintiff's treating physician (TR 18-19), Plaintiff's subjective complaints (TR 20), and Plaintiff's reported daily activities (TR 19). While Plaintiff is correct that a claimant's sporadic daily activities may not indicate what a claimant can do on a sustained basis, particularly where the claimant experiences periods of remission and exacerbation, the ALJ should consider a claimant's reported daily activities when rendering an RFC determination. *See, e.g.*, *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524 (6th Cir. 1992). Here, the ALJ considered Plaintiff's daily activities, among other evidence, as one factor in the RFC determination.

As discussed in the statements of error above, however, the ALJ failed to appropriately consider the letter from Plaintiff's father, and failed to appropriately consider the nature of, and the limited treatment options for, cerebral palsy. For the reasons discussed above, the ALJ did not meet his duty to develop the record on these issues. Accordingly, the undersigned cannot determine the extent to which these issues may have affected the ALJ's RFC determination.

As has been demonstrated, the ALJ failed to properly evaluate all of the medical and testimonial evidence of record in determining that Plaintiff retained the RFC to perform light work with additional limitations. TR 20. Because the ALJ did not properly evaluate the evidence in reaching this RFC determination, the undersigned recommends that this action be remanded.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's "Motion for Judgment Based On The Administrative Record" be GRANTED, and that the decision of the Commissioner be REMANDED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

JEFFREY S. FRENSLEY
United States Magistrate Judge